STATES (§ 110*)—SUPPORT—COMPENSATION FOR SUPPORTING ASYLUM—"INDIGENT PERSON."

   Insanity Law (Consol. Laws 1909, c. 27) § 2, defines an "indigent person" as one who has not sufficient property to support himself while insane, while sections 85 and 86 respectively provide that all poor and indigent insane persons shall, without unnecessary delay, be transferred to a state hospital and there wholly supported by the state, and that in all claims of the state upon relatives liable for the support of a patient, or upon moneys or property held by the patient, the state shall be deemed a preferred creditor. *Held*, that the state's claim for compensation for the custody and care of an insane person, who had some estate, but was hopelessly insolvent, takes precedence over all other creditors, and is entitled first to be paid; the provision relating to the support of poor and indigent persons not precluding the state from reimbursing itself out of any property they may have.

   [Ed. Note.—For other cases, see States, Cent. Dig. § 108; Dec. Dig. § 110.*

   For other definitions, see Words and Phrases, vol. 4, p. 3556.]

In the matter of the accounting of Harry C. Wesley, as committee of the person and property of Rosina C. M. Taylor, an incompetent person. From an order settling accounts and denying certain claims of the state, the Utica State Hospital appeals. Order modified and affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Jeremiah F. Connor, Deputy Atty. Gen., for appellant.
M. J. Larkin, of Rome, for respondent.

KRUSE, J. The Attorney General appeals from the adjudication made upon the accounting and distribution of the incompetent person, contending that the claim of the state for maintenance of the incompetent in the Utica State Hospital is a preferred claim over the general creditors, the court below having held to the contrary. The matter comes here upon the findings and certain exceptions filed thereto, and the decree from which the appeal is taken. No evidence was tak-

---

en upon the accounting, as is stated in the record, or at least none is returned.

The incompetent person was committed to the Utica State Hospital October 13, 1909, and remained there until May 14, 1910. She was admitted again November 12, 1910, and still remained an inmate of the Utica State Hospital at the time of the accounting. On or about June 23, 1911, a committee was appointed for the incompetent. The property of the incompetent consisted almost entirely of household effects. The committee has converted the same into money, amounting to $592.70, besides $9.58, tax rebate, and also $23 received for property the title to which was in dispute, but which according to the decision belongs to the incompetent, making in all $625.28. The expenses and disbursements of the committee amount to $207.69, leaving $417.59. The personal property sold was also subject to the lien of a chattel mortgage, outstanding October 13, 1909, given to secure two claims, one of $26.90 and another of $41, making $67.90, besides interest. The amount of the claim of the state is $358.64, and the unsecured claims of the general creditors amount to upwards of $1,800.

Without going into the details of the account, it is sufficient to say that, after paying the fees of the committee and the allowances made upon the accounting, there is a balance left for distribution among the creditors of $176.61. It further appears that the incompetent was adjudged an insane person on or about October 13, 1909. Whether that finding refers to the order of commitment or an adjudication upon an inquest is not clear. Probably it refers only to the former, as there is no other finding made as a basis for committing the incompetent to a state hospital, and that is the date of her admission to the state hospital, and the committee was not appointed till June 24, 1911. It also appears from the findings that the incompetent person, at the time she was so adjudged incompetent and admitted to the state hospital, was insolvent and indigent; that she has a daughter, and that at some time between May 14, 1910, and November 12, 1910, she was married to one Dr. Kirchen R. Taylor, who is still living.

The Insanity Law (Consol. Laws 1910, c. 27) provides that all poor and indigent insane persons, not in confinement under criminal proceedings, shall without unnecessary delay be transferred to a state hospital and there wholly supported by the state. Section 85. It requires the father, mother, husband, wife, and children of an insane person, if of sufficient ability, and the committee or guardian of his person and estate, if his estate is sufficient for the purpose, to cause the insane person to be properly and suitably cared for and maintained, and in a proper case, as provided by the Insanity Law, for an order committing him to a state hospital. It further provides:

"In all claims of the state upon relatives liable for the support of a patient, or upon moneys or property held by said patient, the state shall be deemed a preferred creditor." Insanity Law, § 86, as amended by Laws 1910, c. 608.

It is contended on behalf of the general creditors of the incompetent that the right of the state to receive compensation depends upon whether the estate of the incompetent, at the time of the adjudication of incompetency, was sufficient for that purpose; that, if it was not, the

state must care for such person without compensation; and that inasmuch as the incompetent's estate was insolvent at that time, and she was indigent within the meaning of section 2 of the Insanity Law, she not having sufficient property to support herself while insane, the state has no claim against the estate of the insane person. If that is so, it of course logically follows that the general creditors are entitled to take the net balance of this estate, and that the state is not entitled to share therein.

While the statute provides that all poor and indigent insane persons shall be supported by the state, that I think does not prevent the state from reimbursing itself for the support of such persons, if they in fact have property out of which the same may be collected, or collecting the same of the persons liable for the support of such poor and indigent persons. I think the claim of the state is preferred over claims of general creditors existing at the time of the appointment of the committee. Not only does the Insanity Law in express terms give preference to the claims of the state, but that is in harmony with our laws and Constitution, making the claims of the state preferred over other creditors of an insolvent. Matter of Carnegie Trust Co., 206 N. Y. 390, 99 N. E. 1096. The amount owing the state at the time of the appointment of the committee is more than what is left of the estate, and upon the findings made I think the state is entitled to what is left.

The order of the County Court should be modified, by directing the payment of the net balance of $176.61 to the Utica State Hospital, and, as so modified, the order, so far as appealed from, should be affirmed, without costs of this appeal to any party. All concur.