In the Matter of the Estate of MARY JANE WRIGHT, Deceased

Surrogate's Court, Orange County, October 18, 1939.

*John J. Bennett, Jr., Attorney-General* [*David Moses, Assistant Attorney-General*, of counsel], for the claimant.

*Elmer H. Lemon*, for the executor.

TAYLOR, S. The Middletown State Homeopathic Hospital has filed a claim in a substantial amount for the care and maintenance of the decedent's adult son and claims preference in payment.

The parties have stipulated that the Middletown State Homeopathic Hospital is under the Department of Mental Hygiene and cares for persons who are mentally ill; that Henry Wright, a son of

the decedent, was committed to said hospital by the county judge on April 20, 1914, and has since been a patient at the hospital; that the patient is now forty-seven years of age; has been maintained and cared for solely at the expense of the State during his entire stay at the hospital and no payments toward such maintenance have been made by the patient or any one else; that a rate of seven dollars per week was established by the Commissioner of Mental Hygiene to cover the cost of the treatment and maintenance of this patient, and that the patient possesses no estate. It is also conceded that the sum of $335 was paid to the hospital's superintendent under the provision of subdivision 14 of section 34 of the Mental Hygiene Law, which sum was the incompetent's share of the proceeds of an insurance policy on the life of this decedent.

The State relies upon section 24-a and section 40 of the Mental Hygiene Law. The Attorney-General's brief states that section 24-a became a law in 1931, but an analysis of this original statute and its amendments indicates that the sentence therein, " The father, mother, husband, wife and children of a patient or inmate of a State institution in the department who is neither poor nor indigent, if of sufficient ability, and the committee or guardian of his person and/or estate, if his estate is sufficient, shall be legally liable for the expense of the maintenance of such patient or inmate and shall be required to pay or to contribute to the cost of his maintenance at rates fixed by the Commissioner," did not become a part of this statute until 1935, and it is urged that there can be no allowance of so much of this claim as is for maintenance prior to the effective date of this provision of the statute.

There can be no dispute that at common law a parent was not liable, save in exceptional circumstances, for the support and maintenance of an adult child. (*Matter of St. Lawrence State Hospital*, 13 App. Div. 436; *Betz* v. *Horr*, 250 id. 457; revd. on other grounds, 276 N. Y. 83; *Matter of May*, 255 App. Div. 31; *Matter of Fox*, 250 id. 31; 46 C. J. § 47, " Parent and Child.")

It is obvious, therefore, that if there is liability on the part of this estate prior to 1935, it must be predicated upon some other pertinent statute, for it would seem that a statute may not have retroactive effect in imposing liability where none existed under the common law. (*Matter of Kane* v. *Necci*, 245 App. Div. 1.)

There is another statute, however (Mental Hygiene Law, § 80), which provides that " The father, mother, husband, wife or children of an insane person, if of sufficient ability, and the committee or guardian of his person and estate, if his estate is sufficient for the purpose, shall cause him to be properly and suitably cared for and maintained." The statute goes on to provide for the commitment

of insane persons if not properly cared for and maintained without the hospital. The quoted provision of this statute in substantially the same form has been the law for years, having been in the former Insanity Law (Insanity Law, § 86). One may wonder why section 24-a was amended in 1935, to provide for the liability of parents and others. It is to be noted that section 80 refers to " an insane person," while section 24-a refers to " a patient or inmate." By reference to section 2 of the same law we find that " an insane person " is not statutorily defined, but there is defined in that section a " mental defective " and there is apparently a difference between the two. By section 71 one may voluntarily apply for and obtain admission to a State hospital, and it might well be that such person could not be legally classified as a " mental defective " or as an " insane person." Cases might arise in which one legally committed to a State hospital would sometime thereafter demand a trial of the question of his sanity, resulting in a determination that he was not insane. The addition of the quoted sentence to section 24-a in 1935 may well have been for the purpose of eliminating these questions.

The learned counsel for the executor argues rather ingeniously that one possessed of a very modest or small estate, such as this one, was not during his or her lifetime " of sufficient ability " to support or maintain an adult child. The surrogate finds this to be a too narrow construction of the statute. A statute having for its object the relieving of the general public of liability for the support or maintenance of an unfortunate individual by one bound by at least a moral obligation to supply such support and maintenance, should be more liberally construed, and the words " of sufficient ability " should not be limited to the conditions existing during lifetime, but be applicable to one's estate after death. Therefore, it is held that liability attaches to the estate even if it would have been unquestionably determined during the lifetime of the person sought to be charged that he was not then " of sufficient ability." (See *Matter of Wesley,* 156 App. Div. 403, 405.)

The statute (Mental Hygiene Law, § 40) further provides that the amount charged and due for the support of any patient or inmate in any institution in the Department of Mental Hygiene may be recovered through an action or special proceeding. The filing of a claim against an estate is a special proceeding. (*Matter of Wood,* 170 Misc. 752. See *Matter of Toupense,* 163 id. 218.)

It further appears that there was an insurance policy on the life of the decedent and upon her death there became payable to the incompetent the sum of $335. Under subdivision 14 of section 34 of the Mental Hygiene Law, this sum was paid to the superintendent

of the hospital in which the incompetent is an inmate and the statutory provision is that " such funds and the proceeds of the sale of other personal property so received shall be placed to the credit of the inmates for whom received, and disbursed, on the order of the superintendent, to provide luxuries, comforts and necessities for such inmates, including support and burial expenses." The executor claims that if the claim is to be allowed, these insurance moneys should be credited thereon. As the sum is small and as we may very well assume that the hospital superintendent will exercise discretion in its disbursement, it would be more equitable that the sum be left with the superintendent who will undoubtedly retain a sufficient amount in the fund to cover burial expenses. These insurance moneys, therefore, will not be allowed as a credit against the claim.

The claim will be allowed in full.

Decree should be settled on five days' notice or by consent.