In the Matter of HARLEY A. LANNING, as Committee of EMMA H. S. GRANGER, an Incompetent Person, Petitioner.

THOMAS GULLIVER et al., Judgment Creditors.

Supreme Court, Special Term, Steuben County, September 25, 1942.

*Harley A. Lanning,* committee in person, petitioner.

*L. J. Simpson* for Thomas Gulliver et al., judgment creditors.

VANVOORHIS, J. This is a proceeding under article 82 of the Civil Practice Act for the sale of real estate of an incompetent. The petition for the sale is made in the usual manner by the committee (§ 1391), only the interest of the incompetent can be sold (§§ 1388, 1401), and the incompetent can acquire no greater interest ·in the proceeds of the sale than she has in the real property which is the subject of it (§ 1402). Two parcels of land are involved, in one of which the incompetent has a dower estate valued by the referee at $49.05, and in the other of which she owns an undivided half interest valued at $1,800. The referee recommends that these interests of the incompetent in both parcels be sold for $1,849.05 or more at private sale and, if a purchaser at that figure cannot be obtained, that a public sale be held. The referee's report would be confirmed without comment except for the existence of certain liens and claims against the incompetent, the order of priority respecting which was also referred to the referee to hear and report upon.

Questions regarding the validity of these liens must be disposed of in advance of the sale, due to the fact that the incompetent's interest in these properties must be sold subject to whatever valid liens it was subject to when the committee was appointed. The liens and claims in controversy consist of a judgment taken in the Steuben County Court in favor of Thomas Gulliver and against Emma Granger, the present incompetent, docketed June 18, 1935, in the office of the clerk of Steuben county, in the sum of $1,214.96; a judgment in favor of Mary Ireland and Grace I. Damon against the said incompetent taken in the Supreme Court and docketed in the clerk's office of said county September 23, 1941, in the sum of $105.53; and a claim of $6,858 for the care, medical treatment and maintenance of the said incompetent by the State of New York as an inmate of the Rochester State Hospital.

The referee concluded that the State is entitled to be paid its claim of $6,858 in preference to both of these judgments, but that it has waived its priority by not claiming it upon the reference. In this respect the report is disapproved. The State's claim was proven and must be paid according to whatever order of priority the law allows. The State, however, would not have

been entitled to be paid in preference to the Gulliver judgment even if it had claimed that right. The basis on which it was thought that the State could have had priority is section 40, subdivision 2, of the Mental Hygiene Law (Cons. Laws, ch. 27), which states that in all claims of the State for the support of an inmate in a State institution the State shall be deemed a preferred creditor. Therefore it is said that this claim by the State should take precedence over these judgments by reason of the proviso contained in section 1406 of the Civil Practice Act that in the application of money arising from a sale of real property of an incompetent made for the purpose of paying debts, the committee must pay all debts, in equal proportion, without giving a preference to a debt " founded upon a specialty or upon which judgment has been taken." It is said that this reduces the standing of a judgment creditor to that of general creditors over whom the State has preference.

The language quoted can scarcely have been intended to destroy the lien of a judgment against real property of an incompetent in existence at the time of the appointment of a committee of the property. This section has been mentioned several times in the reports. For instance, in *Grant* v. *Humbert* (114 App. Div. 462, 465), it is said that "where the estate of an incompetent is insufficient to pay the claims in full, the court applies his property in payment thereof *pro rata,* without preference, excepting where prior to the adjudication of incompetency *and appointment of the committee,* the creditor has in good faith obtained a lien or acquired a right of property by contract or otherwise, as in *Carter* v. *Burrall* (*supra*), where a warrant of attachment had been duly issued and levied, and in *Matter of Hopper* (*supra*), where a judgment had been recovered and an execution issued and levied, and where there is a mortgage lien and analogous cases. In the case at bar, however, the plaintiff had acquired no lien or right to priority in the payment of his claim at the time the defendant was adjudged incompetent. He had merely duly commenced an action at law." [Italics supplied].

Again in *Matter of Wing* (83 Hun 284, 285), the court said: " The petitioners having failed to issue execution on their judgment *until after the personal property had come into the hands of the committee,* acquire no lien thereon, and, so far as we understand, are entitled to no preference in the distribution of that estate. The statutory prescription in this respect is that the court must provide for the payment of the debts of the lunatic out of the proceeds of his property. (Code Civ.

Proc. § 2321.) This, of course, means all of his debts, so far as his property will go, and necessitates a *pro rata* distribution in case the property is not sufficient to pay the debts in full, *the case of a general or specific lien being, as we conceive, the only exception to this rule.*" [Italics supplied.] In these cited cases the court was, of course, considering the situation primarily as respects personal property, where levy by attachment or execution is necessary in order to acquire a lien, in contrast to the general lien which is imposed upon real property merely by the docketing of the judgment (Civ. Pr. Act, § 510).

*Matter of Otis* (101 N. Y. 580) is cited as authority for the principle expressed in the opinion last quoted, and in the *Otis* case it was pointed out that in the distribution of money arising from the sale of land of a lunatic for the payment of his debts as well as in the distribution of his personal assets, the rule of equality should be applied where the assets are insufficient to pay all the debts in full. But this statement is qualified by the opening sentence of the opinion which states that " the jurisdiction confided to the court over the persons and estates of lunatics, carries with it as a necessary incident, after inquisition found *and the appointment of a committee,* the power to direct the application of the estate of the lunatic to the payment of demands existing against it, and this relief may be granted on the petition of the claimant." [Italics supplied.]

The idea in each of these cases appears to be that liens which have been perfected at the time of the appointment of the committee are not to be disturbed, but that creditors shall not prevent the orderly administration of the estates of incompetents by taking judgment after the committee's appointment or even by the enforcement of prior judgments so as to gain a preference over general creditors by levying against assets other than those upon which the judgment operates as a lien. Illustrations of the latter would arise in the case of attempts after the appointment of a committee to levy upon personal property, or upon real property of the incompetent, where the lien of the judgment had expired when the committee was appointed. That would have no relation to the lien of a judgment *ex proprio vigore* existing at the time of the committee's appointment and continuing until the taking of proceedings for its enforcement. The judgment creditor is in such case in the position of the holder of a mortgage or other type of lien. In the administration of estates in bankruptcy, the liens of judgment creditors against the real estate of the bank-

rupt are preserved and enforced unless they have been obtained within the four months' period under circumstances constituting them voidable preferences under the terms of the act. (Bankruptcy Act, § 67 [U. S. Code, tit. 11, § 107]; *Metcalf* v. *Barker,* 187 U. S. 165, 174.) In the administration of insolvent estates of incompetents under the Civil Practice Act, it was likewise not intended to destroy vested liens in consequence of the taking of possession by the court of the property of the lunatic by means of a committee. It is the more apparent that the appointment of a committee was not meant to divest existing liens when it is recalled that the committee of a lunatic takes no title to the lunatic's real or personal property but is a mere bailiff to administer it subject to the direction of the court. (*Matter of Otis, supra,* page 585.)

It is true that the State has priority over claims of general creditors existing at the time of the appointment of the committee (*Matter of Wesley,* 156 App. Div. 403), but that is a different question from priority over existing lien holders.

In this case Mrs. Granger was committed to the Rochester State Hospital May 17, 1932, but the committee was not appointed and qualified until July 8, 1941. The Gulliver judgment, as has been mentioned, was docketed June 18, 1935, a special guardian having been appointed for Mr. Granger, and the Ireland-Damon judgment September 23, 1941. The Gulliver judgment thus was docketed before the appointment of the committee and the Ireland-Damon judgment was docketed afterward. The State is not entitled to priority over the Gulliver judgment inasmuch as this judgment was a lien on the real estate when the committee was appointed, but the contrary is true with respect to the other judgment. The Ireland-Damon judgment never became a lien in view of Civil Practice Act, section 1406. That question appears to be academic, however, inasmuch as the Gulliver judgment is probably sufficient, with interest, to absorb the entire amount. It is thought that the circumstance that Mrs. Granger was committed to the State Hospital in 1932 is not sufficient to upset the lien of the Gulliver judgment. It is the appointment of the committee, rather than the commitment of the patient, which in the decisions above-cited is regarded as the decisive factor upon this question. The object of Civil Practice Act, section 1406, appears to be to stop creditors from using judgments to disrupt the administration of estates by committees after they have been appointed.

Unless section 1406 of the Civil Practice Act is construed in this manner unreasonable consequences would result. There

would be no rational basis for deciding that a judgment creditor who holds a valid lien by virtue of a judgment against real property should be divested because the judgment debtor becomes insane and has a committee appointed for him, which is something for which the creditor is not responsible and over which he has no control.

It follows that the real property interests of the incompetent should be sold subject to taxes and to the lien of the Gulliver judgment at a price to be arrived at by subtracting the amount of the liens of the taxes and the Gulliver judgment from the $1,849.05 found by the referee to be the value of the incompetent's interest, or from such greater amount as may be realized from the sale, except that upon filing the consent thereto of the holder of the Gulliver judgment, the incompetent's interest in said real property may be sold free and clear of the lien of the Gulliver judgment and the proceeds of sale paid to the said judgment creditor after the sale in priority to any other claims except liens for taxes.