THOMAS, Justice.
This appeal is akin to Warren v. Rhea, Fla., 64 So.2d 567, the only relevant difference in .fact being that here the lunatic was not charged with any crime at the time *565 ■of her commitment to the asylum. ■■ But points of law not common to the other case are presented and we shall undertake to decide them.
The appellees insist- that there was no law at the time of the committal, January 30, 1930, authorizing a suit now to recover the .expenses incurred in the care and treatment of the patient, because of the repeal by Chapter 14527, Laws of Florida, Acts of 1929, Ex.Sess., of that part of Sec. 2312, Revised General Statutes 1920, providing that in cases where persons non compos mentis were solvent expenses of their care and treatment at the hospital should be paid from their estates.
Appellants reply that there was no valid repeal, because of .failure to comply-with the requirements of Sec. 16 pf Article III of. the Constitution, that “Each law * * * shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed, in the title; * * The amendatory act was described as one “to Amend Section 2312 of the Revised General Statutes pf Florida, Relating to Compensation in Lunacy Cases.” [Emphasis added.] The section as it appeared in the compilation was entitled “Compensation, etc.” It consisted of but one paragraph containing provisions for payment of fees to examining physicians, lay-committeémen, county judges, and sheriffs,' and for the approval of, accounts. There followed a proviso for the charge against the county of expenses and costs where the person declared insane wai solvent, for the payment of such “costs, charges and expenses,’' and for the lunatic’s maintenance out of his estate. All provisions we have digested were in one sentence. In the repealing or amendatory act, the provisions about fees of officers and others were retained but revised, while references to allocation of costs, charges, and expenses were eliminated;
We have often discussed the true purpose of the constitutional requirement with reference to titles of . acts of the Legislature and its application to the situation at hand, and have not Been reluctant to hold acts invalid where the titles were deceiving labels of the contents. But in this case wé cannot agree that one reading the title would have been misled about what the Act contained. To do so -we would have to adopt the view that there was such real distinction between the subject of compensation of officers and the subject of payment for maintenance at the State Hospital, with the incidental collection of the cost of care for the patient and treating him there, that reference to ‘compensation’-belied any disturbance of the unrelated, dissociated subjects of care- and treatment.. ■
A close study of the section amended does not’lead us to that conclusion. The various items of" expenses were blended in one' sentence. Costs and charges were placed under the heading “Compensation” and were first fixed, ' then ' dealt with as chargeable either to the county or the lunatic’s' estate, according to his financial condition. Eventually, in the sentence containing the authorization to defray costs/ p.harges and expenses from the luná-ticas property, were added the words “and for the' maintenance ,of said lunatic * * To follow appellants’ reasoning we .would have to attach to the quoted words more significance than they deserve. We agree with appellees in their view that the word ‘compensation’ means, without giving it a strained construction, the payment not only for services,furnished in the care of an insane person, -but also the payment for the services performed in the determination of his mental state.
That such a definition was. intended by the ..Legislature.in the legislation affecting insane persons is apparent from the title of Chapter 3115, Laws of Florida, Acts of 1879, where the present law, Chapter 394, Florida Statutes 1951, and F.S.A., With reference to receipt of pay patients originated. .It read: “AN ACT to allow Lunatics, Idiots, or Insane Persons, whose Friends, Parents or Guardians are able to Pay for the Support of such Lunatics, to be Received into the Asylum for Indigent'Lunatics, and to allow the authorities of such Asylum to receive Compensation therefor.” So, -almost from the beginning of relevant legislation, the word ‘compensation’ was applied to reimbursement of the hospital for costs of maintaining a solvent inmate.
*566 “This court is committed to the rule that it should not declare statutes void as violative of Section 16 of Article III of the Constitution relative to titles and subject-matter properly connected therewith except in clear cases free from every reasonable doubt * *." McConville v. Ft. Pierce Bank & Trust Co., 101 Fla. 727, 135 So. 392, 394. Certainly it cannot 'be said that beyond a reasonable doubt the title to the Act under construction was so misleading that it violated the mandate of the Constitution simply because imbedded in the paragraph were the words “maintenance of said lunatic, .insane, non compos mentis or person devoid of reason” which were mingled with the words “costs, charges and expenses” pertinent to the lunacy proceedings. All were provisions, we think, which properly fell under the head of “Compensation.”
The appellants next contend that the public policy of the state to care only for destitute lunatics has long been established and that it follows, “a fortiori,” that insane persons having the means must pay their way. In the Constitution of 1868, Sec. 1 of Article X, provision was made for the State’s fostering and supporting an institution for the insane, and in Sec. 3 of the same article, for' the counties’ care of “inhabitants who by reason of age, infirmity, or misfortune may have claims upon the aid and sympathy of society.” Even before the adoption of that Constitution the Legislature, by Chapter 792, Laws of Florida-, Acts of 1856, had provided for the support and care of destitute insane persons at the cost of the state. After the adoption, a law was passed providing an asylum for indigent lunatics, Chapter 2012, Laws of Florida, Acts of 1874, and- establishing it at Chattahoochee. Three years later it was provided by act of the Legislature, Chapter 3036, Laws of Florida, Acts of 1877, that destitute lunatics should be sent to the “asylum for indigent lunatics,” or placed with some individual, in which case a certain sum for expenses was allowed to be paid from the appropriation for the maintenance of insane persons. In Chapter 3115, Laws of Florida, Acts of 1879, provisions were made for the admission of solvent patients to the asylum for indigent lunatics and those provisions in almost identical form now appear in Chapter 394, Florida Statutes 1951, and F.S.A. In the Constitution of 1885, Art. XIII, are found the same provisions on the subject as those in the Constitution of 1868.
Although the train of constitutional and statutory law bears out the position that the state has recognized its duty to those of its citizens who have suffered the combined misfortunes of insanity and penury, we do not think it necessarily follows from that policy alone that the estates of solvent insane persons may, in all instances and without condition, be made to bear the cost of their maintenance, much less that the obligation can be enforced as here attempted.
As early as 1856 the lawmakers expressed a purpose to make such estates responsible but the method of doing so was and is, to say the least, unclear. It was merely stipulated that the decree, presumably adjudicating insanity, should “bind the estate” of the solvent lunatic. The law in this respect was amended in 1879, as we have just stated, to provide for a bond, if the Board decided to require one, and a suit on that bond, all pursuant to an arrangement made by the parents, friends or guardians of the solvent insane person, to have him admitted to the “Asylum for Indigent Lunatics.”
Meanwhile, in 1895, by Chapter 4357, Laws of Florida, Acts of 1895, provisions were made to charge the cost of an insane person’s keep against his estate, provisions which this court decided in Heidt v. Caldwell, Fla., 41 So.2d 303, justified judgment against the guardian. For some reason unknown to us these provisions were eliminated by Chapter 14527, supra, so the sole authority for recovery now is by suit on a 'bond given by friends, guardians, or parents, if required by the Board.
After considerable struggle with the statutes on the subject we have come to the conclusion that no authority exists to -recover in a suit like the present one. The patient .was. not received at the hospital on the assurance of a parent, guardian or friend, “able and willing to pay for the *567 care and custody and maintenance of said lunatic, idiot or insane person,” that the assurer would bear the costs. Chapter 3115, supra. The lunatic arrived there via judicial process.
It seems to us that to sanction the judgment sought we would have to hold that upon receipt of a patient in the manner defined in the bill an implied contract would arise upon which suit could be based. We do not have the conviction that the court should undertake to supply by decision what so clearly is lacking in legislation.
We observe, in closing, as we did in the opinion in Warren v. Rhea, supra, that the chapters dealing with lunacy should "receive the earnest attention of the Legislature to the end that there will be a general revision removing the doubt now existing about the proper conduct of lunacy proceedings, the condition under which the estates of financially responsible persons may be charged with their maintenance and the manner of enforcing the liability.
Affirmed.
ROBERTS, C. J., and HOBSON and DREW, JJ., concur.