**The Department of Mental Health of the State of Illinois, for and in Behalf of the People of the State of Illinois, Plaintiff-Appellee, v. Fred Salmar, Defendant-Appellant.**

**Gen. No. 51,358.**

First District, First Division.

April 24, 1967.

Herbert M. Wetzel, of Chicago, for appellant.

William G. Clark, Attorney General, of Chicago (Richard A. Michael and John J. O'Toole, Assistant Attorneys General, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a statutory proceeding under the Mental Health Code of 1951, against Fred Salmar, defendant, for the maintenance of Anna Salmar, defendant's wife, as a patient in the Manteno State Hospital from January 1, 1952, to October 31, 1963. (Ill Rev Stats 1963, c 91½, § 9–19.) Judgment for $9,538.50 and costs was entered against defendant, and he appeals.

Defendant contends (1) that the Attorney General was not the proper legal officer to institute the present action; (2) that the patients who were inmates prior to January 1, 1952, the effective date of the Mental Health Act of 1951, were exempt from liability for maintenance because at that time section 9–1 of the Mental Health Act (Ill Rev Stats, c 91½) provided in part that the expense of maintenance and treatment of an inmate in a state hospital shall be borne by the State; that Anna Salmar was a patient since February 20, 1950, and defendant was denied "due process" when held liable for the instant charges, because of immunity from such charges under the "Saving Clause" of the Mental Health Code (§ 16–1); and (3) that the magistrate who entered the instant judgment was not a judge and was without jurisdiction to entertain a suit for statutory debt.

Defendant's initial contention that the Attorney General of the State of Illinois is not the proper legal officer to institute the present action in debt is predicated upon section 12–25 of the Mental Health Act, which provides in part:

"Upon request of the Department, the State's Attorney of the county in which a responsible relative or a patient who is liable under this Act for payment of sums representing treatment charges resides shall institute appropriate legal action against any such responsible relative, or the patient, or within the time provided by law shall file a claim

against the estate of such patient who fails or refuses to pay the same."

From the above, defendant argues that the legislature placed the sole right to litigate these matters within the office of the State's Attorney, and that such provisions are strictly construed.

■ We believe section 12–25 of the Mental Health Act was intended to permit the State's Attorney to act when requested by the Department, and it was not intended to abrogate any of the powers and duties of the Attorney General. In Fergus v. Russel, 270 Ill 304, 110 NE 130 (1915), it is said (p 339):

> "The Attorney General is vested with many powers and duties, and these appertain to his office under the constitution. He cannot be deprived of these common law functions by the legislature, but new duties may be imposed."

In People ex rel. Barrett v. Finnegan, 378 Ill 387, 38 NE2d 715 (1941), it is said (p 393):

> "As chief law officer of the State he may exercise all such power and authority as public interest may from time to time require."

The duties of the Attorney General are set forth in chapter 14, section 4 (Ill Rev Stats 1965) and include:

> "Second—To institute and prosecute all actions and proceedings in favor of or for the use of the state, which may be necessary in the execution of the duties of any state officer."

■ We conclude from the foregoing that the Attorney General of the State of Illinois, as chief law officer of the state, possessed both the common-law power and the statutory authority to act on behalf of the Depart-

ment of Mental Health in the instant proceeding. Furthermore, we fail to find that defendant's rights in this proceeding could be affected in any manner, whether the Department was represented by either the Attorney General or the State's Attorney.

Defendant's contention of nonliability is grounded on the "Saving Clause" of the Mental Health Act of 1951, § 16–1, which provided:

> "The provisions for repeal contained in this Act shall not in any way affect an offense committed, an act done, a penalty, punishment, or forfeiture incurred, or a claim, right, power or remedy accrued under any law in force prior to the effective date of this Act."

From this defendant argues that the effect of the "Saving Clause" was to preserve his rights and immunities under the act, because his wife had been committed prior to the effective date of the act, and that the judgment is a "deprivation of substantive rights under 'Due Process' " and in violation of the 14th Amendment. The Department argues that the actual effect of the "Saving Clause" was to give cognizance and effect to the rights enumerated for that period which preceded the imposition of the statutory charge and made clear that said charge was not to be applied retroactively. The Department also asserts that to give effect to defendant's contention would create a disparity among those similarly situated for those who have been inmates of mental institutions after January 1, 1952, would be treated in a different and discriminatory manner than those admitted prior to that date, and in violation of section 22, Article 4 of the Illinois Constitution.

Sections 9–19 to 9–25 of the Mental Health Code of 1951 were discussed at length in Kough v. Hoehler, 413 Ill 409, 109 NE2d 177 (1952), and held constitutional.

In that case the arguments included that the sections constituted arbitrary classifications "in violation of the 'equal protection of the laws' and 'due process of law' guarantees of the fourteenth amendment to the constitution of the United States, and that they constitute legislation in violation of section 22, article IV of the [Illinois] constitution." In holding that the provisions of these sections were constitutional, the court's remarks included (p 418):

> "Since these charges partake of a public charity, (rather than a governmental purpose,) the original cost of which is borne by the public, it is entirely proper and fitting that the patients, their estates and relatives, in so far as they are able, should reimburse the State for so much of the expense of their care as possible, and thereby lessen the burden upon the public."

In Department of Public Welfare v. A'Hern, 14 Ill2d 575, 153 NE2d 22 (1958), a claim was filed against the estate of an incompetent for maintenance charges, and in holding that it was a proper claim, the Supreme Court said (p 579):

> "It is thus obvious from the statute that liability of the patient, his estate, or the specified responsible person exists at all times, either from the effective date of the act or from the admission of the patient, whichever occurs later. . . . The principle of making retroactive charges for the furnishing of such care by a public body is not new, but is a common-law remedy. . . . No provision of the Mental Health Code provides that such services are gratuitous where an ability to pay appears, and no officer can form such a gratuitous intention."

In Department of Public Welfare v. Bohleber, 21 Ill2d 587, 173 NE2d 457 (1961), it is said (p 592):

"As is demonstrated in Department of Public Welfare v. A'Hern, 14 Ill2d 575, there is nothing in section 9–21, or in section 9–25, (which provides that costs will be borne by the State if there is no one able to pay) which extinguishes the liability fixed by section 9–19, or limits the State's right and duty to claim and collect maintenance costs, should any liable person or estate acquire the ability to pay in whole or in part."

We conclude from the foregoing authorities that the liability of defendant for the maintenance of his wife commenced on January 1, 1952, the effective date of the Mental Health Act of 1951, and the "Saving Clause" made clear that any maintenance charges were not to be applied retroactively and did not confer any prospective exclusive privilege or immunity from charges to patients who might have been inmates of a state institution prior to January 1, 1952. The only vested right possessed by defendant or his wife was that either or both could not be charged for any prior maintenance.

Defendant's final contention that a magistrate of the Circuit Court is without jurisdiction to entertain a suit for a statutory debt is without merit. Judgment against defendant for $9,538.50 was entered March 10, 1966, by a magistrate of the Circuit Court of Cook County. We consider the instant proceedings and the amount of money involved come within the provisions of section 622 of Courts (Ill Rev Stats 1965, c 37), which defines the civil proceedings assignable to a magistrate.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.