WIGGINTON, Judge.
Plaintiff has appealed a final judgment on the pleadings rendered in favor of defendant. It is contended that the trial court erred in holding that defendant was entitled to judgment as a matter of law. Applying the controlling principles applicable to a consideration of a motion for judgment on the pleadings, the following undisputed facts are established.
Charles F. Jimerson was adjudged mentally incompetent by the County Judge’s Court of Duval County and was admitted as a patient to the Florida State Hospital for the Insane at Chattahoochee on May 14, 1935, where he remained until the time of his death on January 16, 1971. Appellee, Maude J. Harrell, was duly appointed ad-ministratrix of the decedent’s estate in which plaintiff filed its claim for the cost of care, maintenance, and treatment furnished the decedent while a patient at the state hospital. Appellee filed her written objection to the claim, whereupon this suit was instituted.
Appellant’s claim represents what is alleged to be the reasonable charges and expenses incurred in furnishing care, maintenance, and treatment to the incompetent between August 1, 1955, the effective date of the statute on which the claim is based, and January 16, 1971, the date on which the decedent died.
The legislature of 1955 enacted Chapter 29909, effective August 1, 1955, which contained the following provision respecting payment for the care of committed incompetents, to wit:
“Reasonable charges and expenses for the care, maintenance and treatment of committed incompetents under any pro *341 vision of this Section and reimbursement for such charges and expenses that may be advanced by the State or any political subdivision thereof, shall be a lawful charge against the person and estate or property, real, tangible or intangible, of said incompetent in this state. Such charges and expenses may lawfully he paid from the estate of the said incompetent by any authorized personal representative, parent, or legal guardian of said incompetent; provided, however, that the payment thereof, in advance or otherwise, shall never be a prerequisite to the care, maintenance and treatment of any committed incompetent under any circumstances whatsoever. In cases of commitments to State hospitals or institutions, such charges and expenses shall be fixed or approved by the Board of Commissioners of State Institutions of Florida. In the case of commitments to private hospitals or to public hospitals or institutions other than State hospitals or institutions, such charges and expenses shall be fixed or approved by the board of county commissioners of the county wherein the patient is or has been committed. Any suit or action instituted by the State of Florida or any political subdivision thereof for the recovery of such charges and expenses against the person or his duly authorized personal representative, parent, or legal guardian, shall be brought by the State Attorney of the Judicial Circuit in which said incompetent was committed, or by the Office of the Attorney General or both such State Attorney and Office of the Attorney General, as the case may be, as party plaintiff.” [1]
Appellee contended and the trial court held, on the authority of the decision rendered by the Third District Court of Appeal in the case of Kirk v. Wiggin,[2] that there is no legal authority to support appellant’s claim against the estate of the deceased incompetent under the facts and circumstances of this case.
Our Supreme Court, in the decisions rendered by it in Warren v. Pope [3] and Warren v. Rhea,[4] has given a very enlightening history of the constitutional and statutory provisions adopted from time to time by the people and legislatures of Florida dealing with the establishment of hospitals for furnishing care and maintenance for insane persons. From this history it appears that the initial concern of the state was to provide proper hospitalization for insane indigents who were incapable of caring for themselves. The state later adopted legislation which permitted solvent insane persons to be admitted to state hospitals for care and treatment upon the condition that they pay such reasonable charges and expenses as may be incurred for the furnishing of such services. It appears, however, that in revising the statutes dealing with this general subject, the legislature in 1929, extra session, repealed the then existing statute which required solvent insane persons to pay the cost of care, maintenance and treatment furnished them at state mental hospitals.[5] Thus it was that there was no statutory authority for imposing on solvent insane persons the reasonable cost of their care and maintenance furnished at state hospitals between the year 1929 when the repealing act was adopted, supra, and the year 1955 when the present statute was enacted reimposing upon solvent insane persons, or their estates, the reasonable cost and expenses of furnishing them care and treatment while committed as patients to state hospitals.
A careful examination of the above-quoted statute, under which appellant asserts its claim, reveals no language or pro *342 vision which can be construed as expressing a legislative intent to exempt from the financial obligations imposed by the statute all persons admitted to state hospitals prior to the enactment thereof. Admittedly, an insane person committed to a hospital in Florida prior to the enactment of the 1955 statute could not be charged nor his estate burdened with the expense of his care and maintenance incurred prior to the time the statute became a law. We are concerned, however, only with the question of whether solvent incompetent persons committed as patients to state hospitals prior to the enactment of the statute are liable for the reasonable cost of care and maintenance thereafter furnished to them.
The general rule followed by a majority of courts in this country is to the following effect:
“As will be shown in succeeding subdivisions of this section, the legislatures may permit the public authorities to recover expenses incurred in the maintenance of an insane person from him or his estate, his relatives, or other public authorities. Such recovery may be authorized with respect to persons committed prior to the passage of the statute, and claims due at time of its passage, as well as those to become due thereafter. ”[6]
In the case of State v. Romme [7] an incompetent was admitted to the state hospital for the insane in the year 1879, where she remained until the time of her death on October 26, 1917. During the period of her confinement she was furnished care and maintenance at state expense. In the year 1917 the legislature of Connecticut enacted a statute authorizing the state to enforce against patients who had received care and maintenance at the state insane hospital, or against their estates, claims for expenses incurred within six years prior to the last services so furnished. The State of Connecticut brought suit against the estate of a deceased incompetent seeking recovery of the expenses incurred by it in furnishing care and maintenance to the patient at the state mental hospital for the six years prior to her death. The claim was upheld against the contention that the statute authorizing recovery was not in effect at the time the patient was committed to the hospital and that to enforce the statute retroactively would offend rights guaranteed by the constitution of Connecticut. In affirming the judgment rendered in favor of the state by the trial court, the Supreme Court of Errors of Connecticut said :
“It has been suggested in support of the claim that the statute ought not to be given a retroactive construction; that recovery by the state of payment made prior to the passage of the act would be so unfair and unjust that it must be presumed not to have been within the legislative contemplation. This argument is based upon a premise more superficially plausible than sound. Reimbursement is sought from the unfortunate’s estate left at her decease and not otherwise. That estate was primarily chargeable for her care and support, and was directly benefited by the state’s contribution to that end. The amount remaining in the defendant administrator’s hands represents, in part at least, that benefit. What unfairness or injustice there can be in compelling repayment out of it of the state's contribution for the unfortunate’s welfare we are unable to discover. The consequence of such repayment will, of course, be that the estate to be divided among the expectant heirs, who permitted the unfortunate to become a public charge, will be diminished in amount, but the superiority of their position in either law or morals over that of the state is not apparent.”
*343 In. the case of the Department of Mental Health v. Salmar,[8] the First District Appellate Court of Illinois considered a case factually similar in all material respects to the case sub judice. One of the primary questions involved on that appeal was the question presented for our decision in the case we now review. In rejecting the appellee’s contention that he was not liable for the cost of care and maintenance furnished to his wife who was an incompetent patient at the state mental hospital because she was admitted to the hospial prior to the enactment of the statute imposing such obligation, the court said:
“We conclude from the foregoing authorities that the liability of defendant for the maintenance of his wife commenced on January 1, 1952, the effective date of the Mental Health Act of 1951, and the ‘Saving Clause’ made clear that any maintenance charges were not to be applied retroactively and did not confer any prospective exclusive privilege or immunity from charges to patients who might have been inmates of a state institution prior to January 1, 1952. The only vested right possessed by defendant or his wife was that either or both could not be charged for any prior maintenance.”
In reaching its decision the court in the Sal-mar case cited with approval the decision of Department of Public Welfare v. A’Hern[9] in which the court disposed of a similar issue adverse to the position of nonliability and said:
“ ‘It is thus obvious from the statute that liability of the patient, his estate, or the specified responsible person exists at all times, either from the effective date of the act or from the admission of the patient, whichever occurs later. * * * The principle of making retroactive charges for the furnishing of such care by a public body is not new, but is a common-law remedy. * * * No provision of the Mental Health Code provides that such services are gratuitous where an ability to pay appears, and no officer can form such a gratuitous intention.’ ”
In the case sub judice the trial court based its judgment squarely upon the decision rendered by the Third District Court of Appeal in the case of Kirk v. Wiggin, supra. The facts in the Kirk case are substantially identical in all material respects with those in the case we now review. There the State sought to recover against a solvent incompetent the cost of care and maintenance furnished her while a patient at the state hospital for the insane. She was committed to the hospital on March 31, 1936, and apparently continued to be a patient in that hospital at the time the action was brought against her. The State of Florida sought to recover from the incompetent and her legal guardian the cost of maintenance and care furnished her from August 1, 1955, the effective date of the statute which permitted recovery of such expenses from solvent incompetents, down to the date the suit was filed. In affirming the action of the trial court in dismissing the complaint with prejudice, the Third District Court held:
“At the time the incompetent was committed, there was no statute providing that the State could recover reasonable costs for care and maintenance. Without such being in effect on the date of the adjudication of incompetency, there is no cause of action by the State-pursuant to a statute enacted after the party [who is committed] whose estate is to be charged was declared incompetent. See: Heidt v. Caldwell, Fla.1949, 41 So.2d 303; Warren v. Pope, Fla.1953, 64 So.2d 564; Warren v. Rhea, Fla.1953, 64 So.2d 567.” [10]
*344 We have carefully examined the three decisions cited as authority for its holding by the court in Kirk. We are unable to agree, however, that any of the decisions on which the court’s holding is predicated is authority for the conclusion reached. None of the three decisions affirmatively hold that a solvent insane person committed to a state hospital for the insane who is furnished care and maintenance cannot be held liable for the reasonable cost of the maintenance and care furnished to him subsequent to the later enactment of the statute imposing such liability. Although the trial court in the case sub judice was justified in relying on the decision in Kirk v. Wiggin, supra, as authority for the judgment rendered by it, we cannot agree that it represents the sounder rule of law which should be followed in this state.
We are not unmindful of the sympathy which the pitiful condition of a mental incompetent invariably attracts. The policy of the law generally tends to treat the welfare of such unfortunate persons with compassion and mercy. We are not here dealing, however, with an indigent lunatic for whose benefit state-supported mental institutions were originally created but with a person financially capable of paying for his own support and maintenance in the same manner as he would have been required to do had he been entirely sane.
In reaching our conclusion it should be emphasized that we are not giving a retroactive effect to the statute in question but, on the contrary, are giving it a prospective application only. Any mental incompetent, whether solvent or insolvent, who was committed to a state mental institution prior to August 1, 1955, enjoyed a financial windfall for all expenses incurred by the state in furnishing him care and maintenance prior to August 1, 1955. This fortuitous circumstance does not create in him a vested right to continuous free care and support for the remainder of his life. Since the enactment of the 1955 statute, such previously committed patient should and must be placed on the same basis as any other solvent incompetent who is thereafter committed to the same institution and is receiving the same care, maintenance, and treatment. So long as each is financially able to pay the reasonable cost incurred on his behalf at the hospital, he should be required to do so without discrimination or arbitrary differences in their status as paying or nonpaying patients. To hold otherwise would be to create an artificial and unreasonable classification between equally solvent patients, giving rise to a violation of the due process and equal protection clause of our state and federal constitutions.
In conclusion, we regretfully are impelled to take a position of disagreement with our sister court of appeal in its decision rendered in Kirk v. Wiggin, supra, and the judgment appealed herein based thereon must be reversed and the cause remanded for further proceedings consistent with the views expressed herein.
Reversed and remanded.
CARROLL, DONALD K., Acting C. J., and JOHNSON, J., concur.

. F.S. § 394.22(13), F.S.A.

. Kirk v. Wiggin, (Fla.App.1971) 242 So.2d 725.

. Warren v. Pope, (Fla.1953) 64 So.2d 564.

. Warren v. Rhea, (Fla.1953) 64 So.2d 567.

. Chapter 14527, Laws of Florida, Acts of 1929.

. 44 C.J.S. Insane Persons § 75(2) (a), p. 178. See also South Carolina Mental Health Commission v. May, 226 S.C. 108, 83 S.E.2d 713; State v. Stone (Tex.Civ. App.) 271 S.W.2d 741; In re Wright’s Estate, 172 Misc. 215, 14 N.Y.S.2d 953.

. State v. Romme (1919) 93 Conn. 571, 107 A. 519, 520.

. Department of Mental Health v. Salmar, 82 Ill.App.2d 450, 226 N.E.2d 511, 513.

. Department of Public Welfare v. A’Hern, 14 Ill.2d 575, 153 N.E.2d 22, 24.

. Kirk v. Wiggin, supra note 2 at 726 of 242 So.2d.