OPINION OF THE COURT
John M. Thomas, S.
In this final accounting proceeding, the New York State *414 Office of Mental Health files its objection on the basis of the executors’ rejection of a claim filed by the New York State Office of Mental Health in the amount of $215,394.38 for care and services rendered to the spouse of the deceased testator. Additionally, there were five other specified objections, two of which have been subsequently withdrawn, leaving remaining the objection to payment of any elective share of the estate assets to Mary C. Leounis or her successors, payment of distributions to the executors, who are also beneficiaries of the estate, and payment of any compensation to the coexecutors in the manner of commissions.
This decision first addresses itself to two questions, which together with a stipulation of facts, the two contesting parties have filed with the court. First: Is the estate of Charles A. Leounis liable to the State of New York Office of Mental Health for the cost of care rendered by the State to Mary Leounis, the decedent’s wife? Second: If the answer to the previous question is in the positive, what is the proper calculation of the amount of such contribution?
Charles Leounis, the decedent herein, died April 19, 1987, his surviving spouse, Mary Leounis, except for approximately three weeks was a patient at the Binghamton Psychiatric Center operated by the New York State Office of Mental Health from October 8, 1977, until her death on June 7, 1988. Mr. and Mrs. Leounis remained married until the death of Charles. Mr. Leounis was born in Greece. English was his second language. At the time that he was 83 years old, in March of 1981, at the request of the New York State Office of Mental Health he completed and signed a financial disclosure form. It is undetermined whether he was assisted in the preparation of this form by a representative of the Office of Mental Health. On the form several stocks were listed but only two bank accounts totaling approximately $5,900. In fact, at the time this form was completed Mr. and Mrs. Leounis had two certificates of deposit totaling approximately $36,000. These certificates were never disclosed to the claimant’s representatives even though the decedent, Charles Leounis, had five subsequent interviews with claimant’s representatives, neither did he disclose nor did the claimant’s representative specifically request, any information regarding the certificates. Of the total original claim of $343,338.04, Charles Leounis paid $30,377.09, the estate of Mary Leounis paid $69,087.80, and Medicaid Part B paid $28,478.77, leaving a remaining balance due of $215,394.38. A summary of the estate final account *415 shows principal and income received by the fiduciaries in the amount of $205,372.61, funeral and administration expenses of $17,801.21, creditors paid $301.64, distribution to legatees and distributees including the coexecutors herein $69,040.57, leaving a balance on hand at schedule F for distribution of $118,229.19.
The representatives of the estate, in support of their argument that Charles’ estate is not liable for care given to his surviving spouse before her death, first argue that Mental Hygiene Law § 43.03 limits the liability for care rendered by the Department to those entities set forth in the statute, to wit, "the patient, his estate, his spouse, his parents, or his legal guardian”. The coexecutors’ counsel, after a brief review of the legislative history of the statute, concludes that although the decedent was liable for his spouse’s care during his lifetime, his estate is not so liable since the Legislature, although including the estate of the patient’s, excluded by omission the estate of the spouse. In support of his conclusion, counsel cites Matter of Osadchey (53 AD2d 960) and Matter of Seelen (87 Misc 2d 360). In the Osadchey case (supra) the patient decedent was predeceased by her daughter. In the settlement of the daughter’s estate it was determined that the patient was entitled to 70% of the daughter’s net estate. After the death of the patient, the Department of Mental Hygiene claimed a retroactive rate adjustment which was sustained by the Surrogate’s Court and affirmed by the Appellate Division. There the petitioners urged the court that the claim was invalid on the grounds that section 43.03 of the Mental Hygiene Law permits the Commissioner to make adjustments in charges after reducing or waiving fees only if the assets discovered to exist were not disclosed because of fraud or negligence. The Appellate Division in affirming the lower court states without citing authority "[t]he limitation of the commissioner’s right of collection to cases of fraud or negligence contained in subdivision (b) of section 43.03 applies only to collections from patient’s spouses or parents and not from a patient or his estate. With regard to the patient or his estate, retroactive charges up to full fee may be claimed against his assets without regard to amounts previously paid or even if there is no fraud or negligence.” (Supra, at 960.) The actual holding of the court, therefore, only concerns itself with assets belonging to the patient decedent, and has no actual relevance to a proceeding against the estate of a responsible party under section 43.03. By inference, the petitioners now before the *416 court would have us conclude that by reason of the quoted language, the assets of a spouse or spouse’s estate cannot be attacked absent fraud or negligence. The court’s quoted language and the petitioners’ conclusion points up the problem brought on by the recodification of the Mental Hygiene Law in 1972 (L 1972, ch 251, eff Jan. 1, 1973), wherein the distinction between the "recovery statutes” and the "contribution statutes” was obliterated. Surrogate Sobel, former Surrogate of King’s County, in a scholarly opinion rendered in Matter of Seelen (87 Misc 2d 360, 364, supra), after discussing the history and the distinction between the two types of statutes states "it is the repeal, no doubt inadvertent (see Legislative mem, McKinney’s 1972 Session Laws, p 3289) of the former recovery statute (Mental Hygiene Law, former § 24, subd [6]) that has created problems for the Surrogate’s Courts in disposing of Department of Mental Health claims.” In the Seelen case (supra), one of the two cases cited by the estate, the Department of Mental Hygiene filed a claim with the committee of the patient who was holding assets of over $100,000 belonging to the patient. The committee contended that the estate of the deceased husband, as the estate of a responsible relative, was primarily liable to pay the claim. The court in denying the committee’s position held that whenever a patient has independent assets apart from a beneficial interest in a spouse’s estate, such assets are primarily liable. This holding is not precedent for the executors’ position in this case. Additionally, it is important to note that in rendering the court’s decision, Surrogate Sobel states, "However where the patient has no independent assets, the claim will be made against the estate of the responsible relative * * *. If the patient is a beneficiary of the estate, the patient’s beneficial share is primarily liable and the estate’s assets secondarily liable to the extent that the patient’s share is insufficient to pay the Department’s total claim. (Cf. Matter of McClancy, 182 Misc 866, affd 268 App Div 876, Matter of Berg, 271 App Div 934; Matter of Falletta, 22 Misc 2d 991.)” (Supra, at 365.) Irrespective of the fact that there is no specific provision under section 43.03 specifying the estate of a responsible party, and that there are no specific cases addressing this question, it is a faulty conclusion to assume that the assets of a deceased spouse are protected against the claim of the Department. Regardless of the language of the reimbursement statute at any particular time, the courts of New York when presented with the question have consistently held that the *417 assets of the responsible party’s estate must yield to Department’s claim. (See, Matter of Berg, supra; Matter of Falletta, supra; Matter of McChesney, 177 Misc 731; Matter of Wright, 172 Misc 215; Matter of Wesley, 156 App Div 403.)
Having answered the first question of the stipulation in the affirmative, the court now addresses the proper calculation of the amount of such contribution. The executors contend that under section 43.03 (b), the Commissioner has no claim absent fraud or negligence on the part of the patient or a responsible party. The language of the applicable part of the section states, "[i]f the commissioner discovers that assets existing at the time of determination were not disclosed because of fraud or negligence, the department may collect the difference between the amount paid and the actual cost of services.” As previously noted, the stipulated facts show the decedent was over 80 years old at the time completing the form, and spoke English as a second language. The executors contend that the decedent, Charles Leounis, did answer the questions relative to bank accounts, but since the omitted accounts were certificates of deposit, did not include the same and therefore should not be held accountable. The court rejects this contention. First, although Mr. Leounis was 80 years old and English a second language, there is not one scintilla of evidence in the stipulation or supporting records that Mr. Leounis was not perfectly capable of reading and thoroughly understanding the English language or was impaired by any physical frailties from responding to the questions asked in the form. There are millions of people in this country that are 80 years old, that English is their second language. That in itself is no defense in Claris non est locus conjecturis. There is absolutely no evidence of fraud, but the failure of Mr. Leounis to include the certificates of deposit, either under bank accounts or the catch-all section for annuities, mortgages, or other assets, at the very least is negligent even under the most liberal of definitions of that concept.
Finally, the executors contend that under the regulations of the Commissioner implementing the appropriate sections of law, that the measure of responsibility is the difference between the amounts actually received and the rate in which reimbursement would have been set had all available information been considered. Here the executors seek to replace the statutory language with the directives of a regulation principally used to reestablish a rate during the lifetime of the patient when assets have been withheld from the knowledge *418 of the Commissioner. The language of the statute is clear and unequivocal, that if the Commissioner discovers assets not disclosed because of negligence the Department may collect the difference between the "amount paid and the actual cost of services.” (Mental Hygiene Law § 43.03 [b].) Here that amount, after the prior payments, is $215,394.38, and it is that amount to which the Department of Mental Hygiene is entitled in this proceeding.
Pursuant to SCPA 1811, the claim of the Department of Mental Hygiene has preference over the elective share of Mary C. Leounis, set forth in exhibit A of the petition to account. Additionally, pursuant to EPTL 12-1.1, the Department of Mental Hygiene’s lien attaches to the distributions previously made to the fiduciaries and set forth at schedule E of the account.
The New York State Office of Mental Health in its objections also objects to the payment of the executors’ commissions to the fiduciaries in this proceeding. Although the court has sustained the Department’s claim, the court does not find the rejection of that claim by the coexecutors to be so inappropriate that they should be penalized by the forfeiture of their commissions, and therefore awards them their full commissions in this proceeding.
In summary and referring to the objections filed in this court on October 29, 1990, by the Department, objection No. 1 was previously withdrawn, objection No. 2 is sustained, objection No. 3 is sustained, objection No. 4 is sustained, objection No. 5 is denied, objection No. 6 previously withdrawn.